IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**SAMANTHA SIMONETTA,**
    **Plaintiff,**

vs.

**ALLEGHENY COLLEGE, et al.,**
    **Defendants.**

Civil Action No. 20-32 ERIE

District Judge Susan Paradise Baxter

### MEMORANDUM OPINION

## I.    INTRODUCTION

### A.    Relevant Procedural History

Plaintiff brings this action pursuant to Title IX of the Education Amendments Act, 20 U.S.C. § 1681, et seq. ("Title IX"), against Defendant Allegheny College ("Allegheny"), alleging that she was subjected to gender-based abuse, harassment, and discrimination while she was a student at Allegheny and a member of its football team, during the calendar year 2018. In addition, Plaintiff asserts a negligence claim against Allegheny and the following individual Defendants: Allegheny's Director of Athletics and Recreation Bill Ross ("Ross"); Allegheny's Head Football Coach William "BJ" Hammer II ("Hammer"); Allegheny's Assistant Football Coaches Curtis Bailey ("Bailey") and Andrew Fragale ("Fragale"); and Nikki Newman ("Newman"), identified as a third party witness to the incidents at issue in this case. Plaintiff also asserts state law claims of negligence, tortious interference with contractual relations[1] and negligent infliction of emotional distress against the individual Defendants, and purportedly asserts a Title IX claim of retaliation against Allegheny, although the latter claim is not set forth

---

[1] In her opposition brief, Plaintiff has withdrawn, without prejudice, her claim of tortious interference with contractual relations, so such claim will not be addressed herein and will be dismissed accordingly.

as a separate count in the complaint. As relief for her claims, Plaintiff seeks declaratory and injunctive relief, compensatory and monetary damages, costs, and attorneys' fees.

Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted [ECF No. 8]. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 16], and Defendants have filed a reply brief [ECF No. 19]. This matter is now ripe for consideration.

### B.     Relevant Factual History[2]

Plaintiff is a student at Allegheny, a private liberal arts college in Meadville, Pennsylvania (ECF No. 1, Complaint, at ¶¶ 1-2). In October and November 2017, Plaintiff contacted Defendant Hammer and expressed her interest in joining Allegheny's football team, and submitted paperwork confirming her intent. (Id. at ¶¶ 12, 14-15). On January 15, 2018, Defendant Bailey acknowledged Plaintiff's interest in playing football and, at his request, she signed the required NCAA handbook. (Id. at ¶¶ 16, 18). By the end of January 2018, Plaintiff began participating in the football team's winter workouts. (Id. at ¶ 19).

On February 5, 2018, one of Plaintiff's teammates "began openly making unwelcome sexual advances toward her during football practice," and made "explicit and inappropriate sexual comments to her." (Id. at ¶ 20). The teammate continued his harassment on February 8, 2018, by making unwanted advances, "putting his arm around her and telling her that she was beautiful." (Id. at ¶ 21). Sometime in mid-February 2018, Plaintiff found it necessary to disclose

---

[2] The factual history set forth herein is derived from the allegations of the complaint, which are accepted as true for the purpose of determining Defendants' motion to dismiss, to the extent they are well-pleaded. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).

her teammate's inappropriate conduct to Defendant Bailey, who assured her that he would address the conduct with Defendant Hammer. (Id. at ¶¶ 23-24).

When spring football practices resumed in March 2018, Plaintiff was provided a practice jersey but was not given access to a locker room, nor was she assigned a jersey number like her male teammates. (Id. at ¶ 26). On or about April 11, 2018, Plaintiff notified the coaching staff by email that she would be forced to miss practice due to a required academic project, but she received no response. (Id. at ¶ 27). On April 13, 2018, Defendant Bailey notified Plaintiff that she was being placed on academic probation and would not be allowed to participate in practice sessions, even though Plaintiff claims that her grades were sufficient to allow her to remain eligible to participate. (Id. at ¶¶ 29-31).

On April 24, 2018, Plaintiff was notified by Defendant Bailey's office that she was being suspended from the football team as a result of her academic performance and missed practices. (Id. at ¶ 33). Defendant Bailey also informed Plaintiff that three male players had been recruited. (Id. at ¶ 34). When Plaintiff attempted to speak with Defendant Bailey during a practice session, he instructed her to follow up with him after she received her grades. (Id. at ¶ 36). On May 1, 2018, Plaintiff emailed Defendant Bailey and informed him that her grades had improved; however, she received no response. (Id. at ¶ 37). On May 22, 2018, Plaintiff sent proof of her improved grades to Defendant Bailey but, again, received no response. (Id. at ¶ 38).

On July 25, 2018, Plaintiff again emailed Defendant Bailey asking for a response to her earlier correspondence and stating that she was ready to return to the team. (Id. at ¶ 39). Defendant Bailey responded to Plaintiff on July 30, 2018, demanding that she wait until the conclusion of the fall semester to return to the team and suggesting that, in the meantime she

serve as a team manager. (Id. at ¶¶ 40-41). On August 3, 2018, Plaintiff received correspondence instructing her to report to Allegheny's campus on August 9, 2018. (Id. at ¶ 42).

When Plaintiff arrived at the campus on August 9, she received her dormitory key, but did not receive any information regarding the football schedule. (Id. at ¶ 43). Later that same day Plaintiff received a text message from Defendant Bailey asking where she was, which confused her because she was not made aware of any team commitment that day. (Id. at ¶ 44). As a result of the ongoing lack of communication from team officials, Plaintiff's parents requested a meeting with the Athletic Director and members of the coaching staff. (Id. at ¶ 45).

The requested meeting took place on August 10, 2018, and was attended by Plaintiff and her parents, and Defendants Ross, Hammer, Bailey, Fragale, and Newman. (Id. at ¶ 46). During the meeting, Plaintiff attempted to voice her position that the coaching staff had deliberately withheld team information, "but she was promptly interrupted and accused of lying," (Id. at ¶ 47). Plaintiff's father then asked if it was an appropriate time to discuss Plaintiff's previously reported sexual harassment by her teammates. (Id. at ¶ 49). After a period of silence, Defendant Bailey admitted that he was aware of Plaintiff's harassment allegations but failed to report them to anyone, including Defendant Hammer, despite his representation that he would do so. (Id. at ¶¶ 50-52). Defendant Ross then promptly ended the meeting stating that appropriate authorities would need to be involved. (Id. at ¶ 53).

Following the meeting of August 10, 2018, Plaintiff had no formal contact with the coaching staff and was no longer a member of the team. (Id. at ¶ 56). Thereafter, in September 2018, Plaintiff was inappropriately touched by a former teammate, who tried to kiss her and attempted to pull her into his dorm room without her consent. (Id. at ¶¶ 57-58). Plaintiff chose

not to report the incident to the football coaching staff but, instead, filed a report with Allegheny's Title IX coordinator. (Id. at ¶ 59). Plaintiff's pursuit of her Title IX action through the college ultimately resulted in a finding on December 17, 2018, that her former teammate had violated Allegheny's Policy Against Discriminatory Sexual Harassment, "including sexual assault and other forms of sexual violence, dating violence, domestic violence and stalking." (Id. at ¶ 61).

### C.   Discussion

#### 1.   Count I – Title IX Gender-Based Discrimination

Plaintiff alleges that "[d]espite actual notice of the harassment, [Allegheny] was deliberately indifferent to the gender-based abuse, harassment, and discrimination," and, as a result, "deprived [Plaintiff] of access to the educational and extracurricular opportunities and benefits provided by [Allegheny]," in violation of Title IX. (Id. at ¶¶ 71, 74).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A public-school student may bring suit against a school under Title IX for student-on-student sexual harassment, "but only where the [school] acts with deliberate indifference to known acts of harassment in its programs or activities" and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999).

Deliberate indifference requires a response (or failure to respond) that is "clearly

unreasonable in light of the known circumstances." Id. at 648. To establish deliberate indifference, a plaintiff must show that the school knew about the plaintiff's sexual assault and ensuing harassment and failed to respond adequately. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1989) ("[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."); see also Terrell v. Delaware State Univ., 2010 WL 2952221, at *2 (D.Del. July 23, 2010). ("To establish deliberate indifference, a plaintiff must show that the school made an official decision not to remedy the sexual harassment") (citing Gebser, 524 U.S. at 290).

Moreover, "in the context of student-on-student harassment, private damages are limited only in cases where there is a 'systemic effect of denying the victim equal access to an educational program or activity.'" Roe v. Pennsylvania State Univ., 2019 WL 652527, at *5-6 (E.D.Pa. Feb. 15, 2019), quoting Davis, 526 U.S. at 652. In this regard, "courts consider whether the harassment 'had a concrete, negative effect' on the plaintiff's 'ability to receive an education.'" Nungesser v. Columbia Univ., 244 F.Supp.3d 345, 367 (S.D.N.Y. 2017) (citations omitted). "Examples of such negative effects include a drop in grades, missing school, being forced to transfer schools, or mental health issues requiring therapy or medication." Id. at 368 (citations omitted). As a result, such claims "impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." Saravanan v. Drexel Univ., 2017 WL 5659821, at *7 (E.D.Pa. Nov. 24, 2017); see also T.B. v. New Kensington-Arnold Sch. Dist.,

2016 WL 6879569, at *7 (W.D.Pa. Nov. 22, 2016) ("The deliberate indifference standard sets a high bar for a plaintiff seeking to recover under Title IX").

Here, Plaintiff claims that Defendant Allegheny "was deliberately indifferent to the gender-based abuse, harassment, and discrimination" of which the Defendant allegedly "had actual knowledge." (ECF No. 1, at ¶¶ 69, 71). Initially, the Court finds that, to the extent this claim is intended to include Allegheny's response to the incidents of sexual assault she suffered at the hands of a former teammate in September 2018, such claim is without merit. According to Plaintiff, these incidents were reported to Allegheny's Title IX coordinator and were formally pursued by Plaintiff through the college, which ultimately rendered a finding on December 17, 2018, that the offender had violated the College's Policy Against Discriminatory and Sexual Harassment, Including: Sexual Assault and Other Forms of Sexual Violence, Dating Violence, Domestic Violence and Stalking (Id. at ¶¶ 59, 61). Despite the horrific nature of the assaults, the prosecution and prompt determination of Plaintiff's complaint regarding the September 2018 incidents belies any claim of deliberate indifference on the part of Allegheny.

Thus, the Court will limit its consideration of Plaintiff's claim of deliberate indifference to the alleged harassment instigated by one of her teammates in February 2018, which Plaintiff reported to Defendant Bailey in mid-February 2018. According to Plaintiff, the teammate's harassment included "inappropriately leering at her buttocks;" making "explicit and inappropriate sexual comments to her, including telling her he would "fuck her silly;" "unwanted physical touching by putting his arm around her and telling her that she was beautiful;" and confronting and, apparently, making unwanted sexual advances toward her outside of the team's weight room. (Id. at ¶¶ 20-22). Plaintiff alleges that these incidents occurred on February 5, 2018

and February 8, 2018. Defendants seek to dismiss this claim arguing, *inter alia*, that the harassment Plaintiff allegedly experienced was neither "severe" nor "pervasive" enough to satisfy the objective standard of a deliberate indifference claim. Unfortunately, the precedent does not provide much room for those requirements, which are not met here.

Importantly, although the Court does not in any way condone the type of shameful and offensive conduct alleged by Plaintiff or the non-response by Allegheny, the Court is constrained to find that such alleged conduct, committed over the course of two days, falls short of the type of severe and pervasive harassment contemplated by Title IX. See, e.g., Pahssen v. Merrill Cmty. Sch. Dist., 668 F.3d 356, 363 (6th Cir. 2012) (holding that three separate incidents of sexual harassment – a male student shoving a female student into a locker, making an "obscene sexual gesture" toward her, and demanding that she perform oral sex on him - did "not rise to the level of severe, pervasive, and objectively offensive conduct"); compare with Davis, 526 U.S. at 653-54 ("repeated acts of sexual harassment ... over a 5-month period," including verbal harassment and "numerous acts of objectively offensive touching" that ultimately led the offending student to plead guilty to criminal sexual misconduct, found to meet "severe and pervasive" standard). In so finding, the Court aligns with the Fourth Circuit's observation that "incidents that are questionably severe, and are more offensive than physically threatening or humiliating do not satisfy the objective analysis required of the 'severe or pervasive' element of a plaintiff's prima facie case" of deliberate indifference under Title IX. Ammirante v. Ohio Cty. Bd. of Educ., 2019 WL 5295188, at *10 (N.D.W.Va. Oct. 18, 2019), citing Green v. Caldera, 19 Fed. Appx. 79, 80 (4th Cir. 2001).

Moreover, even if the Court found Plaintiff's allegations sufficient to satisfy the severe

and pervasive standard, Plaintiff has failed to sufficiently allege that the harassment "had a concrete, negative effect" on her "ability to receive an education." Nungesser, 244 F.Supp.3d at 367. Although Plaintiff attempts to argue in her opposition brief that she began to "experience an academic decline" after she reported her teammate's harassment to Defendant Bailey, the allegations of her complaint indicate that such decline, if any, was short-lived. Significantly, Plaintiff alleges that on or about April 13, 2018, only two months after she reported the harassment to Defendant Bailey, her "grade point average was sufficient for her to remain eligible to participate" on the football team. (ECF No. 1, at ¶ 30). Then, only two weeks later, on May 1, 2018, Plaintiff alleges that she informed Defendant Bailey that "her grades had improved" and sent him proof of her improved grades. (Id. at ¶¶ 37-38). Despite this inconsistency, the Supreme Court has held "that a mere 'decline in grades'" is insufficient to survive a motion to dismiss, in any event. Davis, 526 U.S. at 652.

Based on the foregoing, therefore, Plaintiff's deliberate indifference claim against Defendant Allegheny will be dismissed, reluctantly.

### 2. Title IX – Retaliation

In her complaint, Plaintiff has set forth a number of allegations under the heading "Retaliation Following Report of Harassment" (ECF No. 1, at ¶¶ 26-55), which are apparently intended to set forth a claim of retaliation under Title IX, despite the fact that such a claim is not specifically set forth as a separate count in the complaint (See ECF No. 16, Opposition Brief, at pp, 5-8). Recognizing this, Defendants have moved to dismiss this claim, as well (ECF No. 9, at pp. 13-14).

Although Title IX does not explicitly provide a cause of action for retaliation, the

Supreme Court has interpreted Title IX's prohibition of sexual discrimination to include retaliation. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005). To assert a viable claim for retaliation under Title IX, Plaintiff must plead facts sufficient to plausibly show that Defendant Allegheny "retaliated against [her] because [she] complained of sex discrimination." Id. at 184. "Retaliation is, by definition, an intentional act…. [It] "is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." Id. at 173-74. To establish a *prima facie* case of retaliation under Title IX, a plaintiff must show that: (1) she engaged in activity protected by Title IX; (2) she suffered an adverse action; and (3) there was a causal connection between the two. Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 564 (3d Cir. 2017).

Here, Plaintiff has alleged that she reported her teammate's sexual harassment to Defendant Bailey in mid-February, 2018. (ECF No. 1, at ¶ 23). This allegation is sufficient to establish that she engaged in protected activity under Title IX. See Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d 332, 374 (W.D.Pa. 2008) ("Protected activities include complaints of sexual discrimination to the courts, government agencies, or *the funding recipient*") (emphasis added). Plaintiff then goes on to list a number of incidents that allegedly began to occur within a few weeks after she reported the harassment to Defendant Bailey, including (1) not being given access to a locker room or assigned a jersey number like her male teammates when spring football practices resumed on March 1, 2018 (ECF No. 1, at ¶26); (2) being placed on academic probation on April 13, 2018, even though her grade point average was sufficient to remain eligible to participate (Id. at ¶¶ 29-30); (3) being told by Defendant Bailey that she was suspended from the team on April 24, 2018, as a result of her academic performance

and missed practices, at around the same time three male players had been recruited (Id. at ¶¶ 33-34); (4) not receiving a response to her correspondence in May 2018 that her grades had improved until July 30, 2018, when Defendant Bailey demanded that she wait until the end of the fall semester to return to the team and suggested that she serve as a team manager in the interim (Id. at ¶¶ 37-41); (5) failing to receive prior notice of a team commitment on August 9, 2018, after being given only six days' notice of her need to report to campus on that date.

At the pleading stage, the above allegations are sufficient to show that Plaintiff suffered a succession of adverse actions that occurred after and in close proximity to the date she reported her sexual harassment complaint to Defendant Bailey. Defendants' argument that these allegations "are plainly inconsistent with other allegations in the Complaint that [Plaintiff] had attendance and academic issues that impeded her full participation with the football team" is baseless. (ECF No. 9, at pp. 13-14). Aside from one alleged instance when Plaintiff was absent from practice "due to a required academic project" (ECF No. 1, at ¶ 27), all other allegations of "attendance and academic issues" are attributed in the complaint to Defendant Bailey's comments and/or failure to communicate, rather than concessions by Plaintiff. (Id. at ¶¶ 29-31, 33. 44). Furthermore, Defendants' assertion that Plaintiff fails to "allege that her suspension from the team … was pretext" (ECF No. 9, at p. 13) is misguided, as such an allegation is not required to set forth a claim of retaliation.

Based on the foregoing, the Court finds that Plaintiff has met her burden of alleging a *prima facie* case of retaliation, and Defendants' motion to dismiss such claim will be denied.

### 3.     Negligence-Based Claims (Counts II and IV)

Plaintiff has asserted state tort claims of negligence and negligent infliction of emotional

distress against all Defendants based upon the alleged breach of their duties of care to protect her from gender-based abuse, harassment, and discrimination.

Defendants initially argue that Plaintiff's negligence-based claims are barred by the gist of the action doctrine, because they arise from duties that are contractual in nature. In particular, Defendants assert that "all of the duties with which Plaintiff claims [Allegheny] failed to comply arise out of [Allegheny's] policies (which are part of the contract)," while "all of the duties the individual Defendants allegedly owe to Plaintiff arise from their employment with [Allegheny]." (ECF No. 9, at p. 15). The Court agrees.

"The gist of the action doctrine provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action ... although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016), quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). "Although claims for breach of contract and negligence 'derive from a common origin,' tort actions stem from 'breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus.'" Powell v. St. Joseph's Univ., 2018 WL 994478, at *7 (E.D.Pa. Feb. 20, 2018) (citations omitted). Thus, the doctrine has been applied to bar negligence claims "(1) arising solely from a contract between the parties (2) where the duties allegedly breached were created and grounded in the contract itself (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." eToll, Inc. v. Elias/Savion Advert., 811 A.2d 10, 19 (Pa. Super. 2002) (internal quotations omitted) (citations omitted).

To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because "the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Bruno, 106 A.3d at 68. "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not controlling." Id.

Here, Plaintiff alleges that Defendant Bailey "deliberately withheld" Plaintiff's report of sexual harassment "from the appropriate authorities, and thus no Title IX investigation was completed in February 2018." (ECF No. 1, at ¶ 82). Similarly, Plaintiff alleges that "none of the Defendants took the appropriate steps to investigate" Plaintiff's allegations of sexual harassment raised at the meeting in August 2018 "as required by Title IX." (Id. at ¶ 83). These alleged duties to report and/or investigate Plaintiff's sexual harassment allegations in accordance with Title IX arise solely from Defendants' contractual obligations under Allegheny's "Discrimination and Sexual Harassment Policy." Consequently, such duties are contractual in nature, and any claim based on a breach of those duties arises in contract, not in tort. Thus, Plaintiff's negligence-based claims against all Defendants are barred by the gist of the action doctrine and will be dismissed. See Reardon v. Allegheny College, 926 A.2d 477 (Pa. Super. 2007) (ruling negligence claims were barred by the gist of the action doctrine where the university policies "represent[ed] the sole basis for the relationship between the parties"). Nonetheless, Plaintiff will be granted the opportunity to amend her complaint to reformulate such claim(s) as a breach of contract claim if she so desires.

An appropriate Order follows.